UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANAY M. COX, | | |
| Plaintiff, | | No. 1:25-CV-05597 |
| v. | | Judge Edmond E. Chang |
| UNITED PARCEL SERVICE, INC., | | |
| Defendant. | | |
| | | |
| JANAY M. COX, | | |
| Plaintiff, | | No. 1:25-CV-05600 |
| v. | | |
| TEAMSTERS LOCAL UNION NO. 705, | | |
| Defendant. | | |

MEMORANDUM OPINION AND ORDER

Janay Cox works as a Preload Supervisor for United Parcel Service, Inc. (commonly known as UPS). R. 49-1, UPS First Am. Compl. ¶¶ 16, 28, 35; R2. 9, Local 705 First Am. Compl. at 9 ¶ 11.[1] She filed two separate suits against UPS and Teamsters Local Union No. 705 (referred to by the parties as Local 705), alleging employment

---

[1] Citations to the record in *Cox v. United Parcel Service, Inc.*, Case No. 1:25-cv-05600, are "R." followed by the docket entry number and, if needed, a page or paragraph number. Citations to the record in *Cox v. Teamsters Local Union No. 705*, Case No. 1:25-cv-05597, are "R2.," followed by the docket entry number and, if needed, a page or paragraph number.

discrimination under federal and state law, as well as violations of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*[2] UPS First Am. Compl. ¶¶ 38–74; Local 705 First Am. Compl. at 10–12 ¶¶ 35–49. The Defendants move to dismiss all counts. R. 72, UPS Mot.; R2. 26, Local 705 Mot. For the reasons explained below, UPS's motion is granted in large part and denied in limited part, and Local 705's motion is granted in full. But Cox is given permission to file a Second Amended Complaint.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Cox began working for UPS as a part-time unloader in August 2023. UPS First Am. Compl. ¶ 22; Local 705 First Am. Compl. at 3 ¶ 7. In that position, Cox was represented by Local 705. *See* Local 705 First Am. Compl. at 3 ¶¶ 7–8.

During initial job training, Cox disclosed to a training supervisor that she had a disability causing a permanent 7.5% loss of use in each leg. Local 705 First Am. Compl. at 2 ¶ 2; UPS First Am. Compl. ¶ 22. Despite the disability, Cox said to an

---

[2]The Court has subject matter jurisdiction over the federal employment discrimination and NLRA claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). And the Court has subject matter jurisdiction over the ERISA claim under 29 U.S.C. § 1132(e). The Court dismisses the federal employment discrimination claims against UPS, as discussed below in Section III.A. As explained in the Opinion, the Court could maintain diversity jurisdiction over Cox's state law claims against UPS, 28 U.S.C. § 1332, if Cox adequately pleads the citizenship and amount-in-controversy requirements.

individual leading the training that she could perform her job duties without pain or aggravation, and did not require or request accommodations at that time. Local 705 First Am. Compl. at 2 ¶ 2. But Cox alleges that after she disclosed the disability, she experienced "increased scrutiny and discipline," as well as sexualized comments and harassment, by her supervisors. UPS First Am. Compl. ¶¶ 22–23; *see* Local 705 First Am. Compl. at 7 ¶ 3. Cox also alleges that she experienced unequal treatment around this time, including being written up for being a few minutes late and accused of time theft for using the bathroom. Local 705 First Am. Compl. at 7 ¶ 3. She also alleges that she was issued two off-the-clock safety violations that did not comply with UPS's disciplinary protocols. *Id.* One of Cox's supervisors allegedly referred to her as another employee's "girlfriend" in front of other employees. Local 705 First Am. Compl. at 8 ¶ 6. Cox reported these incidents to Human Resources, *id.* at 8 ¶ 5, and even filed a police report with the Hodgkins Police Department in September 2023, to disclose the ongoing harassment and discrimination, *id.* at 8 ¶ 6.

From October to December 2023, Cox allegedly tried to contact Local 705 personnel about her discrimination claims. *See* Local 705 First Am. Compl. at 4 ¶ 13(c)–(d). But Cox's union steward and union business agent allegedly failed to advocate for her or file her grievances in a timely manner. *Id.* at 8 ¶ 8. In November 2023, Cox's supervisors allegedly assigned her to work in trailers with loose packages, aggravating her disability and causing her to suffer an injury. UPS First Am. Compl. ¶ 24; Local 705 First Am. Compl. at 8 ¶ 9. At some point, Cox met with the UPS Human Resources director, who advised that Cox should pursue an accommodation

under the Americans with Disabilities Act (ADA). Local 705 First Am. Compl. at 8 ¶ 7. But Cox alleges that the director dismissed her complaints about harassment and retaliation as unfounded. *Id.*

At some point, Cox presumably sought an ADA accommodation from UPS. *See* UPS First Am. Compl. ¶ 25; Local 705 First Am. Compl. at 9 ¶ 10. In November 2023, UPS issued a letter to Cox over email stating that there were no available positions that she was qualified for and capable of performing. UPS First Am. Compl. ¶ 25; Local 705 First Am. Compl. at 9 ¶ 10; *see* R. 15, UPS Compl. Exh. B, UPS ADA Denial Letter. The letter also said that UPS would continue looking for a suitable position for up to six months, and placed Cox on a six-month ADA hold. *See* UPS ADA Denial Letter. Cox alleges that UPS "promis[ed] continued pay" while she was on the ADA hold, but that UPS instead withheld her wages during this time. UPS First Am. Compl. ¶¶ 25, 27. UPS also allegedly misrepresented to the Equal Employment Opportunity Commission (commonly known as the EEOC) that Cox had resigned from her position. *Id.* ¶ 27.

A couple of months later, in January 2024, the UPS Human Resources department cleared Cox to return to work. UPS First Am. Compl. ¶ 26. Cox's ADA file was eventually closed in March 2024. *Id.* In May 2024, UPS offered Cox the position of Preload Supervisor, which she accepted, believing that it would help accommodate her disability. *Id.* ¶ 28; Local 705 First Am. Compl. at 9 ¶ 11. Preload Supervisor is not a union-protected position. Local 705 First Am. Compl. at 9 ¶ 11. So after Cox accepted the position, UPS Labor Relations allegedly informed her that her pending

4

grievances could not proceed because of her new supervisory employment. *Id.* ¶ 12. Cox alleges that UPS put her into the supervisor position as a pretext for taking away her union protections. UPS First Am. Compl. ¶ 28; Local 705 First Am. Compl. at 9 ¶ 12.

Shortly after starting the Preload Supervisor position, Cox faced retaliation and hostility from her new supervisor, Sparkle Howard. UPS First Am. Compl. ¶ 28. Cox alleges that Howard excessively monitored her, altered her schedule without cause, and told other employees that she "did not deserve her position." *Id.* ¶ 29. Howard also allegedly shared Cox's confidential medical information with another employee. *Id.* ¶ 30. Cox asserts that after she reported the harassment, UPS removed Cox from payroll, revoked her system access, and stopped paying her despite her "active" status. *Id.* ¶ 31. As a result of the alleged discrimination, Cox suffers from anxiety, hypertension, and psychological stress. *Id.* ¶ 36.

Cox filed an EEOC charge against UPS in February 2024. R. 73, UPS's Br. at 4. The EEOC issued a right-to-sue letter on February 18, 2025. R. 7-1, UPS Compl. Exh. F, UPS Right-to-Sue Letter. Cox also filed a charge of discrimination against Local 705 with the EEOC in July 2024. Local 705 First Am. Compl. at 3 ¶ 9; *see* R2. 11, Local 705 First Am. Compl. Exh. A, Local 705 EEOC Charge. The EEOC issued a right-to-sue letter on February 18, 2025. R2. 26-2, Local 705's Br. Exh. 7, Local 705 Right-to-Sue Letter. Cox brought suits against UPS and Teamsters on May 20, 2025. R. 1, UPS Compl.; R2. 1, Local 705 Compl.

## II. Legal Standard

A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), whereas a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(1) motion, the plaintiff must establish that the district court has subject matter jurisdiction. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc), *overruled on other grounds*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the

Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task …." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. Finally, pro se complaints are to be liberally construed. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

When deciding a motion to dismiss, the Court may consider the complaint, the motion, and any written instruments attached to the motion as exhibits, "if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up). This doctrine, called the incorporation-by-reference doctrine, "prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

document that proves his claim as no merit." *Id.* (cleaned up). The Court thus considers documents attached to UPS and Local 705's motions to dismiss that are referred to in Cox's complaints and central to her claims without converting the motions to dismiss into motions for summary judgment. *See id.*

### III. Analysis

### A. Civil Rule 8(a)(2)

At the outset, UPS and Local 705 argue that the complaints must be dismissed because they are "shotgun pleadings" that violate Civil Rule 8(a)(2). UPS's Br. at 6–7; R2. 26-1, Local 705's Br. at 8–9. "Shotgun pleading refers to a pleading style in which each count of the complaint incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading." *SEC v. Winemaster*, 529 F. Supp. 3d 880, 906 (N.D. Ill. 2021) (cleaned up). This "style of pleading can prevent the opposing party from reasonably being able to prepare a response or simply make the burden of doing so more difficult" in certain circumstances. *Id.* (cleaned up). Although "[c]ourts discourage this style of pleading," "if there is enough clarity to determine what plaintiffs seek to hold, the court may decide the motion to dismiss on the basis of whether plaintiffs have adequately stated a valid claim, rather than requiring them to re-plead their claims again." *Santa Maria v. Loyola Univ. of Chi. Stritch Sch. of Med.*, 2024 WL 4119159, at *4 (N.D. Ill. Sep. 9, 2024) (cleaned up). And "[t]he mere fact that a complaint's counts incorporate by reference each of the preceding factual allegations does not make the complaint an

8

impermissible shotgun pleading, so long as the complaint adequately puts the defendants on notice of the claims against them." *Winemaster*, 529 F. Supp. 3d at 907.

Here, given Cox's *pro se* status, the two respective complaints are not so sprawling that they fail to put UPS and Local 705 on notice of her claims. *See Santa Maria*, 2024 WL 4119159, at *4. Cox separated her claims into digestible counts, and did not bring identical claims against both UPS and Local 705. Cox made an effort to allege different facts in the separate suits against UPS and Local 705. *See generally* UPS First Am. Compl.; Local 705 First Am. Compl. And UPS was able to respond to the employment discrimination, ERISA, and state law claims with reasoned legal analysis. *See* UPS's Br. at 7–14. The same goes for Local 705. *See* Local 705's Br. at 3–9. So both parties adequately understood Cox's pleading. It is true that the complaints are not models of clarity, but the Court was able to review and adequately understand the claims. So the complaints' format and style are not grounds to dismiss them, and the Court "will instead evaluate the sufficiency of her pleading claim-by-claim." *Santa Maria*, 2024 WL 4119159, at *4.

### B. Timeliness of Title VII and ADA claims

Cox brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, against both UPS and Local 705. UPS First Am. Compl. ¶¶ 38–61; Local 705 First Am. Compl. at 10–11 ¶¶ 35–43. UPS argues that Cox's Title VII and ADA claims are time-barred because they were not filed within 90 days of her receipt

of the EEOC right-to-sue letter; Local 705 argues the same. UPS's Br. at 7–9; Local 705's Br. at 9–10.[4]

"Under the ADA … and Title VII, a plaintiff must file her suit within 90 days from the date the EEOC gives notice of the right to sue." *Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999); *see also* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). "The time limit is not flexible, even for pro se litigants, and a one-day delay is fatal." *Davis v. Browner*, 113 F. Supp. 2d 1223, 1226 (N.D. Ill. 2000). In Cox's case, a key statute-of-limitations principle is when the 90-day clock starts to tick. The rule is that the clock starts ticking when the plaintiff is on *notice* of the issuance of the right-to-sue letter: "the 90-day Title VII clock begins ticking not when the plaintiff *reads* the right-to-sue letter, but as soon as the plaintiff is on notice the letter has issued." *Kinder v. Marion Cnty. Prosecutor's Off.*, 132 F.4th 1005, 1008 (7th Cir. 2025) (emphasis added). In *Kinder*, the EEOC emailed the plaintiff there that the "charge was closed," and the Seventh Circuit held that the email notice started the 90-day clock. *Id.* at 1007, 1008–09.

As to both UPS and Local 705, the EEOC issued right-to-sue letters on February 18, 2025. UPS Right-to-Sue Letter; Local 705 Right-to-Sue Letter. Cox filed the two lawsuits on May 20, 2025—which is 91 days after the EEOC issued the letters,

---

[4]UPS also argues that the remaining ADA and Title VII claims are outside the scope of the EEOC charge. UPS's Br. at 9–10. The Court notes that UPS cited Exhibit A, characterized as Cox's EEOC charge of discrimination, to support this argument. *See id.* at 5. But the Court was unable to locate Exhibit A in UPS's briefing or in the exhibits that Cox filed with her original and amended complaints. For its part, Local 705 argues that Cox failed to join UPS, which also requires dismissal. Local 705's Br. at 5–6. Because the claims are dismissed as time-barred, there is no need to opine on these issues.

one day too late. But Cox alleges that it was not until February 26, 2025, that she received an email *reminder* from the EEOC to access her case materials. UPS First Am. Compl. ¶ 11; Local 705 First Am. Compl. at 4 ¶ 11; *see also* R. 15, UPS Compl. Exh. A, EEOC Reminder Email.

What is not clear is when the EEOC *notified* Cox of the issuance of the right-to-sue letters. Did the EEOC email or otherwise notify Cox of the letters' issuance on February 18? In responding to the dismissal motions, Cox does not argue that the February 26 reminder email—in an earlier brief, she states that she was "reminded" by the EEOC email—was the first communication from the EEOC on the right-to-sue letters. R. 57, Pl.'s Resp. to UPS's Mot. for Judgment on the Pleadings at 4; *see generally* R. 85, Pl.'s Resp. to UPS; R2. 27, Pl.'s Resp. to Local 705. Instead, she appears to argue that equitable tolling applies because she suffered a workplace injury on December 20, 2024.[5] Pl.'s Resp. to Local 705 at 4; Pl.'s Resp. to UPS at 3–4.

"Equitable tolling … is reserved for situations in which the claimant has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (cleaned up). "To say that a claimant who receives the notice but does not read it … within the 90 days should be exempt from the limitations period under the principle of equitable tolling renders the procedural rule itself meaningless." *Id.* The courts have permitted equitable tolling in "narrow

---

[5]Cox also argues that she underwent surgery on October 30, 2025, Pl.'s Resp. to Local 705 at 4, but because the right-to-sue letter was issued in February 2025, the date of that surgery is not relevant to equitable tolling.

circumstances, such as where the EEOC lulls or affirmatively induces the plaintiff into inaction." *Nelson v. GXO Logistics Supply Chain, Inc.*, 2025 WL 2976517, at *2 (N.D. Ill. Oct. 22, 2025) (cleaned up); *see also Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992) ("Misleading conduct by the EEOC can be a basis for tolling the administrative statute of limitations."). Cox does not allege that any action (or lack thereof) by the EEOC caused her to wait to file the suits too late. Nor does Cox explain how UPS or Local 705 prevented a timely filing.[6] And though it is true that Cox alleges that she was suffering from a workplace injury in the months before she received the right-to-sue letters, Pl.'s Resp. to Local 705 at 4; Pl.'s Resp. to UPS at 3–4, Cox does not explain how the injury blocked her from filing the suits on time. *See Sereda v. Nomad Freight Inc.*, 2025 WL 641235, at *2–3 (N.D. Ill. Feb. 27, 2025) (holding that equitable tolling did not apply because the plaintiff's medical records did not suggest that the timing of significant medical care prohibited him from filing on time). If Cox chooses to amend her complaints and submit additional information about how her medical condition prevented her from filing suit against UPS and Local 705 in a timely manner, then the Court will again consider this argument.

---

[6]Cox alleges only that UPS falsely told the EEOC that she had resigned, and Local 705 failed to correct this information. Pl.'s Resp. to Local 705 at 3. She contends that the combined actions of UPS and Local 705 "delayed the EEOC investigation by months and prevented a timely review." *Id.* But Cox fails to explain how these actions affected her ability to file the suits against UPS and Local 705 in the 90-day window after the right-to-sue letters were issued. Cox also cites a scattershot of statutes to accuse UPS and Local 705 of obstruction. UPS First Am. Compl. ¶¶ 58–61; Local 705 First Am. Compl. at 5 ¶ 13(i). But the civil statutes, 42 U.S.C. §§ 2000e-8, e-9, just give investigative powers to the EEOC, and do not include a private cause of action. And the criminal statute, 18 U.S.C. § 1512(b), cannot be enforced by a private litigant.

The only other argument offered by Cox is to invoke the continuing-violation doctrine. Pl.'s Resp. to UPS at 2–3. "The continuing violation doctrine allows a plaintiff to base a claim on a time-barred act by showing that the time-barred act is part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period." *Vitello v. Liturgy Training Publ'ns*, 932 F. Supp. 1093, 1097 (N.D. Ill. 1996); *see also Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). The continuing-violation doctrine applies in three circumstances: (1) "where the employer's decision-making process takes place over a period of time, making it difficult to determine the actual date of the allegedly discriminatory act" in the context of hiring or promotion practices; (2) when "an employer's express, openly espoused policy … is alleged to be discriminatory"; and (3) "where an employer covertly follows a practice of discrimination over a period of time." *Jones v. Merchs. Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994). Cox does not allege that UPS has "an express, openly espoused policy that is alleged to be discriminatory," or that UPS "has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy." *Vitello*, 932 F. Supp. at 1097 (cleaned up); *see generally* UPS First Am. Compl. Nor does Cox allege that UPS's decision-making process for her hiring or promotion to Preload Supervisor "[took] place over a period of time, making it difficult to pinpoint the exact day the violation occurred." *Vitello*, 932 F. Supp. at 1097 (cleaned up). So the continuing-violation doctrine has zero application here.

In sum, the Title VII and ADA claims are dismissed because—on the *current* record—Cox filed the lawsuit one day too late. To recap, Cox appears to have received notice of the right-to-sue letters on February 18, 2025, when the EEOC issued the letters. The 90-day clock started ticking on that date and expired on May 19, one day before Cox filed suit. But the dismissal is without prejudice to filing a Second Amended Complaint. (Cox will find more instructions on how to do so in the Conclusion section of this Opinion.) If Cox can in good faith allege that she did not receive notice of the letters until *after* February 18, then discovery would be taken on that factual issue. Indeed, the statute of limitations is an affirmative defense and typically need not be pleaded around. At most, a limitations defense can be decided via a Civil Rule 12(c) judgment on the pleadings if the defense is apparent from the face of the pleadings. *Brownmark Films, LLC*, 682 F.3d at 690. Here, Cox should have the chance to clarify factually *what* she received before February 26 and *when* she received it. Did the EEOC email her on February 18, and if yes, what exactly was the content of the email? *See Kinder*, 132 F.4th at 1007, 1009 (leaving open the question of whether an EEOC email that alerted the plaintiff that a "new document was added" to her portal was enough to start the clock). If Cox wishes to file a Second Amended Complaint, then it is due by **April 27, 2026**.

### C. ERISA

Cox also brings a claim against UPS under ERISA for breach of fiduciary duty.[7] UPS First Am. Compl. ¶¶ 70–74. UPS argues that this claim must be dismissed

---

[7]Cox states that her fiduciary-duty claim under ERISA is also levelled against The Hartford Financial Services Group, Inc., which serves as UPS's fiduciary and administrator

because Cox failed to (1) exhaust administrative remedies, (2) identify a breach of duty, and (3) name the proper party. UPS's Br. at 10–11.

"Congress established the administrative claims resolution process to reduce the number of frivolous law-suits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned." *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012) (cleaned up). "Although ERISA does not require administrative exhaustion as a prerequisite to suit, [courts] have interpreted ERISA as requiring exhaustion of administrative remedies as a pre-requisite to bringing suit under the statute." *Id.* (cleaned up); *see also Powell v. A.T. & T. Commc'ns*, 938 F.2d 823, 825 (7th Cir. 1991) (observing that "the strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of fiduciary duty under ERISA").

The Seventh Circuit has placed the decision to require exhaustion within the discretion of the trial court. *See Powell*, 938 F.2d at 825. Courts "focus … [on] whether the plaintiff has sufficiently alleged facts to establish that he has exhausted administrative remedies," and "[i]f the plaintiff has not exhausted administrative remedies, in some situations [the court] may exercise [its] discretion to excuse the requirement."

---

for ADA wage continuation and short-term disability programs, and Liberty Mutual Insurance Co., which serves as UPS's fiduciary and administrator for workers' compensation and occupational-injury claims. UPS First Am. Compl. ¶¶ 19–20, 70–74. But Hartford and Liberty Mutual are not named defendants in this action, so the Court will only consider whether Cox has sufficiently alleged a claim against UPS.

*Potter v. ICI Americas Inc.*, 103 F. Supp. 2d 1062, 1065–66 (S.D. Ind. 1999). The Seventh Circuit recognizes "two exceptions to the exhaustion requirement: (1) that the plaintiff has been denied meaningful access to the plan's claims and review procedure; and (2) that exhaustion would be futile." *Id.* at 1066.

In the First Amended Complaint, Cox did not describe any steps she took to exhaust this claim before filing suit. *See* UPS First Am. Compl. ¶¶ 22–37, 70–74. Even though UPS explicitly raised the exhaustion argument in moving to dismiss, UPS's Br. at 10, Cox said nothing at all about the argument in her response brief. Pl.'s Resp. to UPS at 1, 4 (discussing exhaustion of administrative remedies only in the context of the EEOC charge). The Court cannot fashion arguments for Cox (or any litigant), so the ERISA claim must be dismissed for failure to exhaust. Given the complete absence of any response argument from Cox on this claim, the dismissal of this claim is with prejudice.

### D. State Law Claims

Cox also brings claims against UPS under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, the Illinois Workers' Compensation Act, 820 ILCS 305/4(h), and the Illinois Whistleblower Act, 740 ILCS 174/15. UPS First Am. Compl. ¶¶ 62–66. She also brings a claim for intentional infliction of emotional distress against UPS and Local 705. *Id.* ¶¶ 67–69; Local 705 First Am. Compl. at 11–12. For the reasons explained below, the only surviving state law claim (for now) is the Wage Payment Act claim.

### 1. Wage Payment and Collection Act

Cox alleges that UPS violated the Wage Payment Act by failing to pay her earned wages and benefits while she was actively employed on ADA status. UPS First Am. Compl. ¶ 63. UPS responds that this claim fails because the First Amended Complaint fails to adequately allege the existence of an agreement between her and UPS. UPS's Br. at 12. But given that informal agreements are enough to trigger the Wage Payment Act, Cox has pleaded enough for this claim to survive.

"To sufficiently plead a cause of action under the [Wage Payment Act], the employee must allege that he is owed compensation pursuant to an employment contract or agreement between the two parties." *McCleary v. Wells Fargo Secs.*, 29 N.E.3d 1087, 1096 (Ill. App. Ct. 2015). The Wage Payment Act requires that an employer "at least semi-monthly … pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3. "Wages" is defined as "any compensation owed an employee by an employer pursuant to an employment contract or *agreement* between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2 (emphasis added). So a formal employment contract is not needed to trigger the Act. An "agreement" is enough. *Id.*

As noted earlier, UPS argues that the First Amended Complaint fails to allege the existence of any agreement or contract to pay her while on ADA status. But "a worker seeking to recover under [the Wage Payment Act] does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill.

17

App. Ct. 2005). "An employment agreement need not be a formally negotiated contract." *Id.* In *Landers-Scelfo,* the Illinois Appellate Court held that the employer "could have manifested its assent to plaintiff's commission arrangement simply by paying her according to it, and plaintiff could have manifested her assent to [the employer] being her employer by continuing to work after it began paying her." *Id.* The appellate court observed that "employers and employees can manifest their assent to conditions of employment by conduct alone." *Id.*

Remember that when deciding a motion to dismiss, the Court accepts as true the allegations in the First Amended Complaint. *Erickson,* 551 U.S. at 94. Cox alleges that UPS withheld wages after "promising continued pay" in her Complaint, and UPS does not refute that allegation in its motion to dismiss (nor could it, given the pleading stage). UPS First Am. Compl. ¶¶ 25, 27; *see* UPS's Br. at 3. So, at this stage, Cox has alleged mutual assent between herself and UPS on whether she would be paid after she was placed on the ADA hold. Of course, as the case proceeds to discovery, Cox will need to show that there was in fact an agreement between herself and UPS for continued pay. But the Wage Payment Act claim survives for now.

### 2. Workers' Compensation Act

Next, Cox alleges that UPS violated the Workers' Compensation Act by incorrectly "entering" her injury cases and delaying her benefits. UPS First Am. Compl. ¶ 64. There are no other concrete facts alleged to support the claim. Under the Act, it is unlawful to interfere with an employee's right to workers' compensation:

> It shall be unlawful for any employer … to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies

18

granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

820 ILCS 305/4(h). It is also unlawful for an employer "to discharge or to threaten to discharge" an employee for exercising rights under the Act. *Id.*

UPS argues that because Cox remains "actively employed" by UPS, she cannot adequately state a claim under the Act. UPS's Br. at 12–13; UPS First Am. Compl. ¶ 35. UPS is right that the Act does not create a cause of action for retaliatory demotion, which is short of outright discharge. In *Zimmerman v. Buchheit of Sparta, Inc.*, the Illinois Supreme Court held that Section 4(h) of the Act does not support "a cause of action for retaliatory demotion or discrimination." 645 N.E.2d 877, 884 (Ill. 1994). The state high court reasoned that an employer's actions short of discharge, such as discriminatory demotions, do not "relieve employers of their responsibility to compensate employees for their work-related injuries," whereas discharges (outright firings) do. *Id.* So *Zimmerman* declined to interpret the Act to cover retaliatory demotion. *Id.*

Without any concrete factual allegations on how UPS supposedly interfered with her rights under the Workers' Compensation Act, the claim must be dismissed in its present form, because Cox continues to be employed by UPS. The dismissal is without prejudice, however, so Cox has a chance (if she can do so in good faith) to allege concrete facts on how UPS interfered with her workers' compensation benefits.

### 3. Whistleblower Act

Next, Cox alleges that UPS retaliated against her for reporting purported safety violations, the company's ADA violations, and harassment. UPS First Am.

19

Compl. ¶ 65. The Illinois Whistleblower Act forbids employers from retaliating against employees for disclosing violations of the law:

> An employer may not take retaliatory action against an employee for disclosing … information to a government or law enforcement agency information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice of the employer (i) violates a State or federal law, rule, or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety.

740 ILCS 174/15(b). Employers are also prohibited from retaliating against employees who disclose or threaten to disclose unlawful activity to "a public body conducting an investigation, or in a court, an administrative hearing, or any other proceeding initiated by a public body," 740 ILCS 174/15(a), or to "any supervisor, principal officer, board member, or supervisor in an organization that has a contractual relationship with the employer who makes the employer aware" of the information, 740 ILCS 174/15(c).

Here, as noted above, Cox premises the whistleblower claim on purported (1) safety violations and (2) discrimination-related violations (ADA non-compliance and discriminatory harassment). UPS First Am. Compl. ¶ 65. But Cox pleads only that she reported "safety violations." *Id.* That is a conclusion, not a set of facts. At best, in another part of the First Amended Complaint, Cox alleges that she was assigned to "unsafe trailers with loose packages," which caused her an injury in November 2023. *Id.* ¶ 24. If that is even a reference to the safety violation, that too is insufficiently concrete to state a claim. Indeed, there is not even an allegation that she reported the violation (whatever it was) outside of UPS to a governmental agency. So,

20

even though not preempted by the Human Rights Act, that theory of liability is inadequately pleaded.

The remainder of the whistleblower claim is preempted by the Human Rights Act.[8] In *Mein v. Masonite Corp.*, the Illinois Supreme Court held that "the legislature intended the [Human Rights Act], with its comprehensive scheme of remedies and administrative procedures, to be the exclusive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations." 485 N.E.2d 312, 315 (Ill. 1985); *see* 775 ILCS 5/8-111(D). When a claim is "inextricably linked" to an alleged violation of an employee's civil rights, it is preempted by the Act. *Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994); *see id.* (holding that the court had no jurisdiction over negligent hiring claims that were "inextricably linked" to allegations of sexual harassment pursuant to the Act). The Human Rights Act prohibits employers from retaliating against an individual "because that person has … opposed or reported conduct that the person reasonably and in good faith believes to be prohibited under [the Act]" or "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the Act]." 775 ILCS 5/6-101(A)(i), (ii). So, under Illinois law, the Act is the exclusive source of redress for employees who have been subjected to an adverse employment action for reporting alleged discrimination. *See Mein*, 485 N.E.2d at 315. So the discrimination-based theory of liability for the whistleblower claim is preempted. Having said that,

---

[8]It is true that the first category—safety violations—would probably not be preempted by the Human Rights Act, because a safety violation would not necessarily be connected to protected-category employment discrimination.

21

as explained above, Cox may attempt to replead a whistleblower claim based on alleged safety violations, but only if she can offer a concrete description of the violations and also adequately allege that she reported the violations to the government and outside of UPS.

### 4. Emotional Distress

Cox also brings a claim for intentional infliction of emotional distress against UPS and Local 705. UPS First Am. Compl. ¶¶ 67–69; Local 705 First Am. Compl. at 11–12. She alleges that "she has suffered ongoing and significant emotional distress" "[a]s a direct result of the discrimination, harassment, and retaliation [she] endured while employed at UPS." Local 705 First Am. Compl. at 11. UPS argues that the emotional-distress claim is preempted by the Human Rights Act because it is inextricably linked to the alleged employment discrimination. UPS's Br. at 13–14.[9]

In *Krocka v. City of Chicago*, the Seventh Circuit held that the Human Rights Act preempted the plaintiff's emotional-distress claim—which was premised on statements made by Chicago Police Department employees that referred to his mental condition—because "the alleged comments were inextricably linked to [the plaintiff]'s disability discrimination claim." 203 F.3d 507, 517 (7th Cir. 2000). "The [Human Rights Act] prohibits employment discrimination based on a person's handicap." *Id.* at 516; *see* 775 ILCS 5/2-101(E-1); 775 ILCS 5/2-102(A). Because the employees' comments "were only offensive to the extent that they referred to [the plaintiff]'s disability," which "inextricably linked" them with the plaintiff's disability discrimination

---

[9]Local 705 does not expressly address the claim in its briefing, *see generally* Local 705's Br.; R2. 40, Local 705's Reply, but the same preemption analysis applies.

claim, the claim was preempted. *Krocka*, 203 F.3d at 517. In contrast, "where a course states an independent state law claim, that independent claim is not preempted by the" statute. *Id.* at 516. "That is, if the conduct would be actionable even aside from its character as a civil rights violation because the [Act] did not furnish the legal duty that the defendant was alleged to have breached, the [Act] does not preempt a state law claim seeking recovery for it." *Id.* at 516–17.

To evaluate whether the emotional-distress claim can stand independent of the Human Rights Act, the Court must evaluate the elements of the claim. A plaintiff must, to properly plead a claim for intentional infliction of emotional distress, "allege facts to establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Schroeder v. RGIS, Inc.*, 992 N.E.2d 509, 517 (Ill. App. Ct. 2013) (cleaned up). "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities do not constitute extreme and outrageous conduct." *Id.* (cleaned up). "[T]he nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.* (cleaned up). And Illinois courts "ha[ve] generally been hesitant to hold that an employer's retaliatory actions were extreme or outrageous enough to satisfy the first element of the tort of the intentional infliction of emotional distress." *Id.* at 518.

Here, Cox's emotional-distress claim is premised on UPS's alleged misrepresentation of her resignation, false statements to the EEOC, payroll suspension,

surveillance, and denial of benefits. UPS First Am. Compl. ¶ 68. That set of alleged misconduct is "inextricably linked," *Krocka*, 203 F.3d at 517, to Cox's claims of employment discrimination. The alleged misconduct would not be actionable "aside from its character as a civil rights violation," *Krocka*, 203 F.3d at 516–17, and is not so "extreme and outrageous" to independently meet the standard for an emotional-distress claim, *Schroeder*, 992 N.E.2d at 517. The claim must be dismissed. Again, if Cox can allege facts that are not connected to the alleged employment discrimination, then she may try to replead this claim.

### E. National Labor Relations Act

Finally, Cox alleges that Local 705 breached its duty of fair representation under the National Labor Relations Act. Local 705 First Am. Compl. at 11 ¶¶ 44–49. She alleges that Local 705 breached this duty by failing to file her grievances in a timely manner, ignoring her calls and messages, and allowing the alleged retaliation to continue. *Id.* at 11 ¶ 46. Cox also alleges that Local 705's "silence" during her ADA proceedings and "ultimate abandonment of her claims following her transfer" also amount to a breach of the duty of fair representation. *Id.* at 11 ¶ 47. Local 705 argues that Cox's claims under the National Labor Relations Act must be dismissed for lack of subject matter jurisdiction, and because they are time-barred and moot. Local 705's Br. at 3–5, 7–8.

The National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, grants employees the right to self-organize; to form, join, or assist labor organizations; and to engage in activities for the purpose of collective bargaining. *See* 29 U.S.C. § 157. Under the Act,

it is an "unfair labor practice" for a union or its agents "to restrain or coerce … employees in the exercise of the rights guaranteed" in Section 157, 29 U.S.C. § 158(b)(1), or "to cause or attempt to cause an employer to discriminate … against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership," 29 U.S.C. § 158(b)(2).

But the enforcement of these rights is not carried out, in the first instance, in federal court. In *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, the Supreme Court held that "courts are not primary tribunals to adjudicate … issues" under Sections 157 and 158, and that "[i]t is essential to the administration of the [NLRA] that these determinations be left in the first instance to the National Labor Relations Board" (well known as the NLRB). 359 U.S. 236, 244–45 (1959). The purpose of the *Garmon* doctrine "is … to protect the primary jurisdiction of the NLRB from federal and state courts … by providing the NLRB with exclusive jurisdiction to determine whether given conduct falls within the NLRA." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 659 (7th Cir. 1992).

There is an exception to this rule. A Section 158 claim is "not preempted under *Garmon* if the activity regulated is merely a peripheral concern of the labor laws or if the conduct touches interests so deeply rooted in local feeling that preemption cannot be inferred absent compelling congressional direction." *Talbot*, 961 F.2d at 660–61. "In determining whether the[] exception[] appl[ies] to a given case, the state's

25

interest in remedying the effects of the challenged conduct must be balanced against the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits." *Id.* at 661. And "[o]f critical importance in determining whether litigation of a … claim necessarily involves a risk of interference with the unfair labor practice jurisdiction of the NLRB, is whether the controversy presented by the … claim is identical to that which could have been presented to the NLRB." *Id.*

Here, Cox alleged that Local 705 "fail[ed] to advocate for [her] amid documented disability-related workplace abuse, retaliation, and sexual harassment," "failed to file key grievances," "obstructed redress through delay and silence," "ignore[ed] calls and messages," and "withdrew all support following [her] … complaints." Local 705 First Am. Compl. at 1, 11 ¶ 46. But Cox submitted three separate unfair labor practice charges to the NLRB based on those allegations. *See* R2. 26-2, Local 705's Br. Exh. 1, 11/30/2023 NLRB Charge (alleging that Local 705 prevented employees from exercising their Section 157 rights by refusing to process her grievance for arbitrary, discriminatory, or bad-faith reasons); R2. 26-2, Local 705's Br. Exh. 3, 02/05/2024 NLRB Charge (same); R2. 26.2, Local 705's Br. Exh. 5, 06/03/2024 NLRB Charge (same, plus alleging that Local 705 failed and refused to bargain in good faith with the employer). Cox voluntarily withdrew the November 2023 NLRB charge, *see* R2. 26-2, Local 705's Br. Exh. 2, NLRB Withdrawal Acknowledgement, and the NLRB dismissed the two 2024 charges because there was not sufficient evidence to show that Local 705's treatment of her grievances was for unfair, arbitrary,

26

or discriminatory reasons, *see* R2. 26-2, Local 705's Br. Exh. 4, 05/03/2024 NLRB Dismissal Letter; R2. 26-2, Local 705's Br. Exh. 6, 09/12/2024 NLRB Dismissal Letter. Because the claims that Cox asks the Court to adjudicate are identical to the ones that she submitted in her unfair labor practice charges to the NLRB, thus "involv[ing] a risk of interference with the unfair labor practice jurisdiction of the NLRB," the Court lacks jurisdiction over the claims.[10] *Talbot*, 961 F.2d at 661. This is a final decision on the claims under the National Labor Relations Act, because no amendment can fix the jurisdictional defect.

## IV. Conclusion

Right now, the only surviving claim is the claim under the Wage Payment and Collection Act against UPS. But Cox may file a Second Amended Complaint in an attempt to replead:

▶ the Title VII and ADA claims against both UPS and Local 705 if she received notice of the EEOC right-to-sue letters after February 18, 2025;

▶ the claim under the Illinois Workers' Compensation Act if she can adequately allege interference with her right to receive benefits;

▶ the claim under the Illinois Whistleblower Act if she can adequately allege that she reported safety violations to government agencies; and

---

[10]Local 705 also argues that Cox's breach of duty of fair representation claim is time-barred. Local 705's Br. at 7–8. In *DelCostello v. Int'l Bhd. of Teamsters*, the Supreme Court held that claims for breaching the duty of fair representation claims are governed by the six-month statute of limitations in 29 U.S.C. § 160(b). 462 U.S. 151, 169–70 (1983). Because all of the actions Cox attributes to Local 705 in her NLRB charges occurred before June 3, 2024 (when she filed her last charge against Local 705 with the NLRB)—nearly a year before she filed her suit against Local 705—the claims would in any event be untimely. *See* 11/20/2023 NLRB Charge; 02/05/2024 NLRB Charge; 06/03/2024 NLRB Charge.

► the claim for intentional infliction of emotional distress if she can adequately allege misconduct that does not arise from employment discrimination.

The Second Amended Complaint, if any, is due on May 4, 2026. Because of the factual overlap between the two cases, Cox must file a **single, combined** Second Amended Complaint **in Case No. 1:25-cv-05597**, bringing all the claims that she has against **both** UPS and Local 705 in that single, consolidated pleading. That not only will be administratively convenient—there will be just the one docket for all filings against the two Defendants—it also will render moot any argument that a necessary defendant is missing. If no amended complaint is filed by the deadline, then the dismissal of the claims will automatically convert to a final dismissal.

The claims under ERISA and the National Labor Relations Act are dismissed with no repleading permitted for those claims.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 13, 2026